UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Criminal No. 07-35-GFVT |
| V. | ) | |
| RANDALL THOMPSON, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND** |
| Defendants. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion for a New Trial [R. 176] and the Motion for Judgment of Acquittal [R. 177] filed by the Defendant John "Mac" Combs. The United States has filed a response in opposition. [R. 179.] For the reasons set forth below, Combs's Motions will be denied.[1]

**I.**

The four-count Indictment [R. 3] charged Combs and his three co-defendants, Randall Thompson, Phillip Champion, and Ronnie Adams, as agents of the local Knott County government, with several counts of criminal wrongdoing related to the distribution of county-purchased blacktop, gravel, and bridge-building materials as part of an attempt to influence the outcome of an election. The Indictment charged all four Defendants with conspiring to buy votes and misappropriate government property, in violation of 18 U.S.C. § 371. The Defendants

---

[1] Prior to sentencing the Defendant on February 2, 2009, the Court noted on the record that the Defendants' post-trial motions would be denied by subsequent writing. This Memorandum Opinion and Order articulates the Court's reasoning and analysis supporting the denial of those motions.

were also collectively charged with aiding and abetting each other in the misappropriation of government property, in violation of 18 U.S.C. § 666, while Ronnie Adams was individually charged with two separate counts of vote buying, in violation of 42 U.S.C. § 1973i(c). Essentially, the Indictment alleged that the Defendants used materials purchased by the government to improve private property and that they did this, by agreement, in exchange for votes for Randy Thompson. As to Mr. Combs, the jury returned guilty verdicts on both the conspiracy and misappropriation counts. [*See* R. 167.] Combs now moves the Court for a Judgment of Acquittal, or in the alternative, a new trial.

## II.

### A.

A motion for acquittal pursuant to Fed. R. Crim. P. 29 takes the place of a motion for directed verdict and raises the question of whether the evidence is sufficient to support a verdict. *United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979). "When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995) (citing *United States v. Riffe*, 28 F.3d 565, 567 (6th Cir. 1994)). There is a "strong presumption in favor of sustaining a jury conviction," *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994), and a defendant seeking a judicial reversal of a jury determination of guilt bears a "very heavy" burden "because the reviewing court does not judge the credibility of witnesses or weigh evidence, and it draws all reasonable inferences in the government's favor." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005); *see also*

*United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir.), *cert. denied*, 512 U.S. 1243 (1994).

**1.**

Combs argues that there was insufficient evidence to sustain a conviction against him. He contends that there was no evidence that he even met with other conspirators or that he talked to them. Combs also asserts that certain things he did in his "line of work" cannot be used to establish his participation in a conspiracy.

Contrary to Combs's arguments, there was sufficient evidence for the jury to convict him. Although Combs's exact position within the county government was unclear, it was clear that he played a key role in determining where the gravel and blacktop would be placed. The testimony of several witnesses supported the notion that Combs had the authority to direct the distribution of gravel and blacktop. For example, Tom Hays testified that Combs rode with him in his truck and told him where to spread gravel. Similarly, Craner Jacobs testified that Combs rode with him on three or four occasions and directed him to put gravel in certain locations. Mr. Jacobs indicated that although he was not sure what was private or public, he did put gravel on driveways. Because Mr. Hays and Mr. Jacobs appeared as slightly reluctant witnesses, the government attempted to impeach them with their prior, more definitive, grand jury testimony. The jury could properly weigh the evidence and give more weight to their prior statements before the grand jury.

Paul Slone, a grader operator, testified that he was directed to haul gravel one Saturday before the election and that Mac Combs rode along with him and told him where to put it. Mr. Slone stated that he believed that several of the locations where he dumped gravel were private driveways that went to garages. According to Mr. Slone, Combs indicated that Judge Thompson

3

had directed Combs to ride along and show Slone where to dump the gravel.

Combs's participation in the conspiracy is further supported by the evidence concerning the paving of his driveway and those of Tammy Brewer and Hoey Dobson. According to Randy Campbell, the contractor who paved those driveways, Combs directed Campbell to put county blacktop on Combs's driveway as well as the driveways of Ms. Brewer and Mr. Dobson. Further, Combs told Campbell to prepare fake receipts for those jobs, even though he did not receive payment from any of those individuals.

While some of the government's proof was circumstantial, that does not mean that the evidence was insufficient to support the verdict. Indeed, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Fortson*, 194 F.3d 730, 735 (6th Cir. 1999). Despite the circumstantial nature of a lot of the evidence, the government contends that a reasonable jury could have found the elements of the offenses beyond a reasonable doubt. The Court agrees. Accordingly, construing the evidence in the light most favorable to the prosecution, sufficient evidence existed for the jury to convict Combs.

**2.**

Combs next argues that because the particular crime at issue involved paving, it could not be prosecuted as a conspiracy because its very nature requires the participation of at least two people. Combs contends that Wharton's Rule precludes a conspiracy charge in this case. His argument is misplaced.

Wharton's Rule, in brief, holds that a defendant cannot be punished for conspiracy and a substantive offense if the substantive offense requires the participation of two persons. *See*

*Iannelli v. United States*, 420 U.S. 770, 773 (1975). The rule traditionally was applied to offenses which by their nature required the acts of more than one person, such as adultery, incest, bigamy, and duelling. *Id.* at 782. In those situations, "the parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Id.* (citation omitted). As the Supreme Court has noted, Wharton's Rule is not grounded in double jeopardy law, but rather "has current viability only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Id.*

Wharton's Rule is simply inapplicable to the present case. Combs cannot plausibly argue that the legislative intent concerning the punishment for vote buying and misappropriation is somehow unclear. These offenses are in no way similar to those to which Wharton's Rule has traditionally been applied. Indeed, the substantive offenses of vote buying and misappropriation cause distinct threats to society including the erosion of trust in our government and elected officials, the subversion of our electoral process, and the diminution of votes cast by individual citizens. Thus, the Court concludes that the type of conduct engaged in by these defendants is precisely the type of conduct that the crime of conspiracy is designed to reach, separate and apart from any substantive violations that might be committed. Moreover, as in *Iannelli*, the agreement connected with the substantive offenses of vote buying and misappropriation poses "the distinct kinds of threats to society that the law of conspiracy seeks to avert." *Id.* at 783. Accordingly, Combs's argument is without merit.

**B.**

Alternatively, Combs contends that a new trial should be ordered pursuant to Fed. R.

Crim. P. 33. Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial *if the interest of justice so requires*." (emphasis added). The trial court "possesses 'wide discretion' in evaluating a Rule 33 motion and may independently evaluate witness credibility and the weight of the evidence offered at trial." *United States v. Roland*, 233 F. App'x 476, 482 (6th Cir. 2007) (citations omitted). Generally, motions for a new trial are disfavored and should be granted with caution. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Indeed, a new trial is appropriate "'only in the *extraordinary circumstances* where the evidence preponderates heavily against the verdict.'" *Roland*, 233 F. App'x at 482 (emphasis added) (citing *United States v. Ashworth*, 836 F .2d 260, 266 (6th Cir. 1988)).

### 1.

Combs maintains that he is entitled to a new trial because the worst evidence against him was totally inadmissible. Combs asserts that the tape recorded grand jury testimony of Tammy Brewer, a secretary in the Knott County Judge Executive's office, and her father, Hoey Dobson, as well as prior tape recordings made by Detective Marcus Hopkins were inadmissible because neither Brewer nor Dobson testified at trial and no valid exception to the hearsay rule exists. He specifically argues that the statements are not admissible pursuant to the co-conspirator exception to the hearsay rule.

During the relevant investigation, Detective Hopkins interviewed both Ms. Brewer and Mr. Dobson and recorded those conversations. He questioned them about their recently paved driveways. Ms. Brewer advised Agent Hopkins that her father, Hoey Dobson, had paid for the paving and that she had a receipt to prove it. Detective Hopkins subsequently questioned Mr.

Dobson, who seemed to have no knowledge about who paved the driveways or who paid for it. Testifying before the grand jury, Ms. Brewer essentially reiterated her prior statements. Mr. Dobson's memory improved significantly from the time he was first interviewed to when he appeared at the grand jury. His testimony to the grand jury was virtually identical to that of his daughter.

At the trial in this case, the government presented the testimony of Randy Campbell, the man who paved Ms. Brewer's driveway. Campbell testified that he did not receive payment from either Ms. Brewer or Mr. Dobson. He also stated that he was directed to use county materials to pave that driveway and that the receipt, produced at the direction of John "Mac" Combs, was not legitimate. Based in part on the testimony of Campbell, Ms. Brewer and Mr. Dobson were convicted of perjury in a separate case prior to the trial in the instant matter. *See* London Criminal No. 6:07-cr-112-GFVT (E.D. Ky.).

Here, Combs presents a lengthy argument that these statements were inadmissible absent an opportunity for cross-examination. Combs argues that the Court committed error by admitting the recorded statements and testimony of Ms. Brewer and Mr. Dobson under Rule 801(d)(2)(E), the coconspirator exception to the hearsay rule. His argument is factually misplaced.

The Federal Rules of Evidence define hearsay as an out of court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, as the Court noted at trial in ruling on the Defendants' objections to the admission these statements, the out-of-court testimony at issue was not offered for its truth. In fact, the point of the government's offering Ms. Brewer's and Mr. Dobson's statements was simply to prove that those statements were made

7

so as to establish a foundation for later showing, through other admissible evidence and testimony, that they were false. *See United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986). In *Hathaway*, the Sixth Circuit concluded that:

> When statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant. Since there is no need to assess the credibility of the declarant of a false statement, we know of no purpose which would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted.

*Hathaway*, 798 F.2d at 905 (citations omitted). Similarly, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court specifically acknowledged that the Sixth Amendment "does not bar the use of testimonial statements for purposes *other than* establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, n.9 (emphasis added) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Thus, when an out-of-court statement is not offered to prove the truth of the matter asserted, as with Brewer's and Dobson's statements, the Confrontation Clause is not implicated. *See Street*, 471 U.S. at 413; *United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990).

The Court further notes that the admission of these statements was not inherently prejudicial to the Defendants. On their face, these statements did not implicate any of the Defendants in any criminal wrongdoing. Rather, they appear to be efforts by Ms. Brewer and Mr. Dobson to escape or limit their own criminal liability. As noted by the government, the relevance of false exculpatory statements generally relates to a consciousness of guilt. The falsity of these particular statements, as established by the testimony of Randy Campbell, provided evidence that county-purchased materials were being used to improve private property. Accordingly, because these statements were properly admitted into evidence, Combs is not

8

entitled to a new trial.

**2.**

Combs contends that other evidence was also improperly admitted. He argues that the government improperly called witnesses for the purpose of eliciting otherwise inadmissible impeachment testimony. Combs vaguely asserts that the government called witnesses, was unable to get them to reiterate a previous statement, and then impeached them. This argument is without merit.

Initially, it is noted that Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him," and Rule 613(b) permits a witness's prior inconsistent statement to be admitted as impeachment evidence, so long as "the witness is afforded an opportunity to explain or deny [the statement] and the opposite party is afforded an opportunity to interrogate the witness . . . ." Fed. R. Evid. 607, 613(b).

In this case, the government did not call witnesses for the sole purpose of impeaching them with otherwise inadmissible evidence. Indeed, the only example cited by Combs involved the government's characterization of the testimony of Robert Graves, the manager of Mountain Enterprises paving company. The government asked Mr. Graves about why his company stopped handling the blacktopping for Knott County during the 2006 election but it did not impeach Mr. Graves with a prior inconsistent statement. Moreover, although not specifically mentioned by Combs, the government did attempt to impeach the testimony of Craner Jacobs and Tom Hays. However, those witnesses were impeached by their prior grand jury testimony. They were given an opportunity to explain their statements and the Defendants were able to cross-examine them. Because the impeachment involved their grand jury testimony, the

witnesses were not impeached with otherwise inadmissible evidence.

**3.**

Combs further argues that an order of dismissal should be entered because the government presented extensive hearsay, double hearsay, and false testimony to the grand jury. Combs asserts that the grand jury indicted him under the false assumptions that he had forged a receipt and had placed amounts on receipts. According to Combs, the indictment would not have been presented had correct information been provided to the grand jury.

At the grand jury proceedings in this case, the government offered incorrect statements about Combs's involvement in issuing fake receipts. The government has admitted some confusion about statements made by Randy Cambell, who denied writing the receipts for some of the driveways. Upon learning of Campbell's denial, the government assumed that someone else – most likely Combs – had forged the receipt. While that theory was ultimately abandoned by the government, what did not change was Campbell's assertion that Combs, Brewer and Dobson never paid for their blacktop. Notwithstanding this confusion, it is clear that any error at the grand jury proceedings was harmless.

Contrary to Combs's argument about the use of hearsay testimony, it is important to note that the Federal Rules of Evidence, other than with respect to privileges, do not apply in proceedings before grand juries. Fed. R. Evid. 1101(d)(2); *see also Costello v. United States*, 350 U.S. 359 (1956) (refusing to allow an indictment to be attacked, for either constitutional or policy reasons, on the ground that only hearsay evidence was presented). A grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation is generally unrestrained by technical, procedural, and evidentiary rules governing

the conduct of criminal trials. *See United States v. Calandra*, 414 U.S. 338 (1974). Moreover, the Sixth Circuit has held that "any error by the prosecution before the grand jury, *including the use of perjured testimony*, is harmless where the defendant was subsequently convicted by the petit jury." *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (emphasis added) (citing *United States v. Mechanik*, 475 U.S. 66, 71-73 (1986)).

This is not a case where the grand jury was presented only with hearsay evidence. Regardless, in light of the inapplicability of the Federal Rules of Evidence, the presentation of hearsay evidence to a grand jury is not a valid ground upon which to attack the indictment. *See Costello*, 350 U.S. 359. Similarly, even if Randy Campbell's grand jury testimony could be construed as false, Combs's subsequent conviction renders any potential error harmless. Thus, the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that Combs was guilty as charged but also that he is in fact guilty as charged beyond a reasonable doubt.

**4.**

Combs next argues that the Court improperly excluded evidence as to whose legal duty it was to supervise road construction projects. According to Combs, Kentucky Revised Statute §§ 179.020, 179.070 set forth the specific duties of the county road supervisor, in this case Harold Dean Bentley. Combs suggests that Bentley failed to perform his statutory duties, and that this was the proximate cause of any illegal paving in this case. This argument is without merit.

In this case, even if Mr. Bentley failed to perform some or all of his duties, that does not detract from or negate the criminal wrongdoing of Mac Combs or any of the other defendants. To borrow the government's analogy, that is like arguing that a bank robber should not be

convicted because the bank would not have been robbed if the guard had not fallen asleep. Simply put, that someone else may have failed to perform certain job duties which could possibly have prevented criminal acts does not eliminate the criminality of those acts.

**5.**

Finally, Combs argues that the Court committed error by failing to identify whether or not any of the Defendants' conduct violated state law. He contends that the jury was required to determine whether a driveway or roadway was public or private. Combs also suggests that the United States cited no authority for the proposition that it is illegal for county employees to pave private driveways or bridges.

Here, the jury was properly instructed on the law concerning the misappropriation charge. In order to find the Defendants guilty, Instruction No. 16 required the jury find that the Defendants "intentionally misapplied more than $5,000 of property *by causing paving contractors and county employees to spread gravel and/or blacktop on private drives and roadways and/or by causing county building materials to be used in the construction of private bridges*." [R. 162, Jury Instructions, p. 21 (emphasis added).] Contrary to the Defendant's arguments, this instruction does define the crime of misapplication. It explains what the jury is required to find in order to determine that the Defendant's conduct was illegal. The instruction characterizes the misapplication of property as the improper use of county materials on private property.

At the Defendants' request, this instruction also included a significant amount of information related to the public versus private distinction as well as ways in which the Defendants could permissibly use government property. For example, Instruction No. 16 goes

on to note that placing or using county materials on county property is not a crime. The instruction also provides a description of several ways in which a road or bridge can be deemed public. Finally, the instruction includes a list of public functions that the fiscal court and/or judge executive may perform, including the provision of ambulance service, the construction and maintenance of suitable areas for the safe turning around of school buses, and the provision of appropriate funds to keep all county roads in good repair and free from obstructions.

Despite the inclusion of the many of the Defendants' requested instructions, Combs still suggests that the Court was required to describe a specific violation of state law in the instructions. However, there is no state law prohibiting every conceivable form of misappropriation by county officials. Thus, although there is no state law specifically prohibiting a county official from using county funds to buy himself a new boat, it is beyond cavil to suggest that such an action is not illegal. Indeed, the use of county purchased materials to improve private property is similarly illegal. Accordingly, because the jury instructions correctly defined the crime of misapplication, a new trial is not warranted.

In sum, the Court has reviewed the entire record as well as all of the arguments raised by the Defendants and considered them under both standards of review. Having considered witness credibility and the weight of the evidence offered at trial, the Court, in its discretion, finds that this is not an extraordinary circumstance where the evidence preponderates heavily against the verdict. Therefore, the interest of justice does not require granting the Defendants a new trial.

**III.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Defendant Combs's Motions for Judgment of Acquittal [177] and New Trial [R. 176] are

**DENIED**.

This the 9th day of February, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge